government's sentencing memorandum
11/2006

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 06-450-01 |
| WALEED THOMAS | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

In June 2006, Defendant Waleed Thomas was in the end stages of a 72-month federal sentence of imprisonment because of his conviction for uttering fictitious financial instruments in violation of 18 U.S.C. § 514(a)(2) in the Middle District of Pennsylvania. At the time, Thomas was serving the remainder of his sentence in a halfway house called the Luzerne Community Corrections Center (LCCC) in Philadelphia. While there, Thomas made the extremely unwise decision to escape, instead of completing his sentence and attempting a law-abiding life. The defendant was on the lam for several weeks before Harrisburg Police arrested him in a Harrisburg, Pennsylvania post office. There is no evidence that the defendant ever attempted to turn himself during the several weeks he was on an escape status. The defendant has ten adult convictions, and was arrested on 14 other occasions during his adult life. Given his egregious criminal history, in which he has accumulated twice the criminal history points necessary to place him in Criminal History Category VI, and the serious nature of the charged offense conduct, the

government recommends a sentence of incarceration within the advisory guideline range of 37 to 46 months.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006).

The Third Circuit has explained that the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant

or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. See also United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006) (directing district courts to explain all guideline determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); United States v. King, 454 F.3d 187, 196-97 (3d Cir. 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review.").[1]

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a within-guideline sentence in this case.

---

[1] In United States v. Grier, 449 F.3d 558, 574-75 (3d Cir. 2006), the panel held that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanded for resentencing. This opinion was subsequently vacated and rescheduled for hearing en banc on a separate issue in the case, regarding whether the preponderance standard applies at sentencing to proof of additional uncharged crimes. The holding with respect to the sufficiency of the sentencing explanation appears to represent the view of the Third Circuit, as made clear in the other cases cited above.

I. BACKGROUND

On August 31, 2006, defendant Waleed Thomas was charged in an Indictment with one count of escape in violation of Title 18 U.S.C. Section 751(a). On October 26, 2006, the defendant pled guilty to escape, in violation of 18 U.S.C. § 751(a). During his plea colloquy, the defendant admitted that he signed out of the LCCC on an approved work pass to his place of employment at Coreflex, 1090 Thomas Busch Highway, Pennsauken, New Jersey, 08110. The defendant had a compulsory return date and time of June 15, 2006 at 2:15 a.m.

On June 15, 2006, the defendant failed to return to the LCCC by 2:15 a.m. LCCC staff searched the facility, and telephonically checked with the Philadelphia Police and local hospitals in an attempt to locate the defendant, but met with negative results. Authorities subsequently placed the defendant on escape status. On June 28, 2006, Harrisburg Police arrested Thomas without incident in the Post Office located in the 800 block of Market Street, Harrisburg, PA.

II. SENTENCING CALCULATION.

A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is five years imprisonment, a $250,000, three years of supervised release, and a $100 special assessment.

B. Sentencing Guidelines Calculation.

In imposing sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines. The Third Circuit has confirmed: "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances." Cooper, 437 F.3d at 330. This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. Id.; see also United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (court may continue to determine by a preponderance of the evidence and consider the defendant's relevant conduct in determining the guideline range). In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before Booker, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker caselaw, which continues to have advisory force.

United States v. King, 454 F.3d 187, 196 (3d Cir. 2006).

The necessary calculation of the guideline range includes the determination whether there should be a departure, either upward or downward, pursuant to the Sentencing Guidelines. See, e.g., United States v. King, 454 F.3d 187, 194 (3d Cir. 2006) (holding that district court erred in not using "ratcheting" procedure to determine extent of upward departure). The issue of guideline departures is distinct from the Court's authority, recognized in Booker, to impose a final sentence which deviates from the guideline range (which the Third Circuit calls a "variance," see United States v. Vampire Nation, 451 F.3d 189, 195 n.2 (3d Cir. 2006)). While the final sentence is subject to appellate review for reasonableness, this Court's decision to deny a requested departure is not itself subject to review if the Court makes clear that its denial is based not on a legal determination that the departure is unavailable but on the Court's exercise of its discretion. Cooper, 437 F.3d at 332-33.

In this case, as stated in the presentence report (PSR), the correct guideline calculation is as follows. Under § 2P1.1(a)(1) of the Sentencing Guidelines, the base offense level is 13. Because the defendant escaped from a community corrections center, a four level reduction is appropriate under Section 2P1.1(b)(3). The defendant's criminal history category is VI. However, the defendant is a career offender. His offense level then would be a 17 under Section 4B1.1(b)(F). His criminal history category would remain VI, and the sentencing guideline range is 37 to 46 months imprisonment, because the defendant is

entitled to an additional three-level downward adjustment for his acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b).

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for–
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A full review of all pertinent factors supports the conclusion that a within-guideline sentence is appropriate in this case.

III. ANALYSIS.

A Importance of the Guideline Range.

The advisory guideline range carries considerable weight even after Booker. As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range . . . ." Cooper, 437 F.3d at 331. The Court later noted: "The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be." United States v. King, 454 F.3d 187, 195 (3d Cir. 2006), quoting United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006).

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was

eliminated in Booker. Rather, the final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

First, the guidelines are much more comprehensive than any other Section 3553(a) factor. Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing. "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)." United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

Second, the guidelines are the product of years of nationwide experience and sustained study. In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing

Commission canvassed prior sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account. U.S.S.G. App. C. Indeed, the Booker Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Booker, 543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. United States v. Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

Third, the correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[2] Congress, the

---

[2] Every opinion in Booker acknowledged the express national policy, as articulated by Congress, that sentences be uniform

Court, and the guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing. "The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases. The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide). Thus, measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

---

across the country to the extent possible. See, e.g., Booker, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Thus, the Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[3]

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[4] reversals of sentences imposed within the

---

[3] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what [the defendant]'s sentence would have been had he been convicted of a similar state-law offense. Booker directs our reasonableness review to the factors set forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

Likewise, in imposing sentence, a district court need not focus on disparate sentences imposed on co-defendants in the same case, as opposed to sentences imposed nationwide on like offenders. United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006).

[4] See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

guideline range have been extraordinarily rare, and have occurred only where the appellate court found that the district court did not adequately explain the sentence. See, e.g., United States v. Carty, 453 F.3d 1214, 1220-21 (9th Cir. 2006). Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[5]

---

[5] "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). The Third Circuit cited this view with approval in King. Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

The Supreme Court has granted certiorari to further clarify the significance of the Sentencing Guidelines. In United States v. Claiborne, 439 F.3d 479 (8th Cir. 2006), cert. granted, 2006 WL 2187967 (U.S. Nov. 3, 2006), the key issue presented is whether, as stated in these cases, a sentence which constitutes a substantial variance from the guidelines must be justified by extraordinary circumstances. The pendency of this case need not concern the Court here, however, as the government asserts that a sentence within the guideline range is most appropriate in this case, and there is no persuasive basis for any variance. In a second case pending before the Supreme Court, United States v. Rita, 177 Fed. Appx. 357 (4th Cir. May 1, 2006) (per curiam; not precedential), cert. granted, 2006 WL 2307774 (U.S. Nov. 3, 2006), the significant question presented is whether it is consistent with Booker to accord a presumption of reasonableness to within-guidelines sentences. The resolution of that case also is not significant here. The Third Circuit, as opposed to the Fourth Circuit and others, has already made clear that no presumption of reasonableness applies to a guideline range. Cooper, 437 F.3d at 331-32. Thus, the government here does not advocate a guideline sentence based on any presumption, but rather based on the persuasive force of the guidelines and the

B. Application of the § 3553(a) Factors.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also point to this conclusion.

The defendant engaged in a serious offense. As a ten-time convicted felon, he was well aware of the implications of his offense conduct, and yet made the astonishingly stupid decision to escape near the conclusion of his sentence of imprisonment. His escape had a significant impact on government resources, as the U.S. Marshals Service searched extensively for the defendant after his escape from the halfway house.

Further, the defendant's history supports the need for significant incarceration. He has been convicted of serious offenses on ten occasions as an adult, and has spent much of his adult life in prison. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Furthermore, the recommended sentence of incarceration affords adequate deterrence to others

---

other considerations of sentencing, as set forth above.

who would commit a similar offense, in this case escaping from a halfway house, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. § 3553(a)(2).

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7).

At the same time, the defendant has not set forth any persuasive argument for leniency.[6] The defendant argues that he is eligible for either a downward departure under U.S.S.G. § 5K2.0(a)(3), or a downward variance under 18 U.S.C. § 3553(a)(1). The defendant suggests that his escape from a halfway house (as opposed to a higher security facility) merits an additional downward departure or variance than already provided for under the guidelines because his status as career offender prevents him benefitting from the four-level downward adjustment from the base offense level because the defendant escaped from a halfway house.

---

[6] It is incumbent on the Court to address any defense argument in determining the final sentence. See Cooper, 437 F.3d at 329 (directing that "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it.").

This argument might have traction if the defendant was someone other than Waleed Thomas, whose criminal history points total twice the amount necessary to place him in Criminal History Category VI on the sentencing table. PSI ¶ 112. If any variance should be considered by this Court, it should be an upward one, given that the defendant has spent almost his entire adult life either committing crimes or residing in prison. This criminal history makes the career offender section the starting point for calculating his guidelines sentence, and justifiably so. PSI ¶ 99. The guidelines sentence set out in the PSI is thus deserved and entirely appropriate under the totality of the circumstances.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. For all of these reasons, the government respectfully recommends that the Court sentence the defendant within the guideline range defined above.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_______________________________
THOMAS M. ZALESKI
Assistant United States Attorney

Date: January 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Government's Guilty Plea Memorandum was served by electronic filing, addressed as follows:

Mark Wilson, Esquire
Defender Association of Philadelphia
Federal Court Division
The Curtis Center Building
601 Walnut Street
Suite 540 West
Independence Square West
Philadelphia, PA 19106

THOMAS M. ZALESKI
Assistant United States Attorney

Date: January 22, 2007